IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WESTFIELD INSURANCE COMPANY,

        Plaintiff,

v.                     //   CIVIL ACTION NO. 1:15CV116
                                 (Judge Keeley)

SAMUEL A. CHICO, III, CHICO
ENTERPRISES, INC., REGINA CHICO
SHEPHARD, and JOANN DERRICO,

        Defendants.

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]

       Pending before the Court are the competing motions for summary judgment filed by the plaintiff, Westfield Insurance Company ("Westfield") (dkt. no. 19), and the defendants, Regina Chico Shephard ("Shephard") and Joann Derrico ("Derrico") (dkt. no. 23). Finding no coverage, the Court **GRANTS** Westfield's motion and **DENIES** the counter-motion of the defendants.

## I. BACKGROUND

       Westfield filed this action seeking a declaratory judgment that various policies it issued to Shephard and Derrico do not provide coverage for claims asserted against them by the defendants, Samuel A. Chico, III, and Chico Enterprises, Inc. ("Claimants").

       Samuel A. Chico, Jr. ("Samuel, Jr.") and Ida D. Chico ("Ida") had six children, Samuel A. Chico, III ("Samuel, III"), Regina

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

Chico Shephard ("Shephard"), Joann Derrico ("Derrico"), Julia Abbitt ("Abbitt"), Monica Bonasso ("Bonasso"), and Connie Merandi ("Merandi"). On October 1, 1991, Samuel, Jr. set up two irrevocable inter vivos trusts designated as the Samuel A. Chico, Jr. Irrevocable Inter Vivos Insurance Trust ("IVIT") and the Samuel A. Chico, Jr. Irrevocable Joint Life Insurance Trust ("JLIT") (collectively "the Trusts"). The Trusts were established for the benefit of Ida during her lifetime, with the remainder to be divided among the six Chico children upon Ida's death (dkt. no. 19-1 at 1). Jordan C. Pappas was named as the initial trustee for each of those Trusts.[1] In addition to the IVIT and JLIT, Samuel, Jr. established the Samuel A. Chico Revocable Trust ("the Revocable Trust") on September 30, 2003. Apparently, Abbitt and Merandi were serving as co-trustees of the Revocable Trust at the time the underlying complaint was filed.

As of August 7, 2005, the IVIT owned two insurance policies on the life of Samuel, Jr., and the JLIT owned four insurance policies on the joint lives of Samuel, Jr. and Ida. The underlying complaint

---

[1]Both of the Trusts explicitly provided that, should Jordan Pappas be unable or unwilling to serve as trustee, Gary Marano was to serve as successor trustee. And, in the event that Gary Marano would be unable or unwilling to serve as trustee, Keith Pappas was to serve as successor trustee

filed in state court by the Claimants alleges that the IVIT did not authorize the appointment of any beneficiary, including Shephard and Derrico, as a successor trustee (dkt. no. 19-1 at 4-5). It further alleges that neither Trust authorized the appointment of any of the Chico daughters as successor trustees. Id. at 5.

Despite this, on August 8, 2005, Abbitt, who is a lawyer, submitted change of ownership and change of beneficiary forms to John Hancock Contract Services ("John Hancock"), the issuer of the six (6) subject life insurance policies (dkt. no. 19-1 at 5). Those forms requested that John Hancock change both the ownership and designated beneficiary of the subject policies to Chico Girls II, LLC, whose members are the five daughters of Samuel, Jr. and Ida Chico (dkt. no. 19-1 at 5). John Hancock honored the request and processed the forms. Id. at 6. Samuel, Jr., Ida, Samuel, III, and Chico Enterprises have no ownership or beneficial interest in Chico Girls II, and allegedly were never informed of the changes in ownership and designated beneficiary of the subject policies (dkt. no. 19-1 at 5-6).

Samuel, Jr. passed away on February 7, 2013, at which time John Hancock paid the proceeds of three of the subject policies to

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

Chico Girls II.[2] Chico Girls II continues to be the owner and designated beneficiary of the three remaining joint life insurance policies.

On February 8, 2015, Samuel, III and Chico Enterprises[3] sued all five Chico daughters individually and also in their capacities as trustees for the trusts. They also sued Jackson Kelly, PLLC, John Hancock, and Chico Girls II (dkt. no. 19-1). The underlying complaint asserts four causes of action against Shephard and Derrico, the relevant defendants in this declaratory action. These include (1) breach of fiduciary duty and self-dealing, (2) tortious interference with an expectancy, (3) fraud, and (4) unjust enrichment. Essentially, the claimants allege that Shephard and Derrico, together with the other Chico daughters, intentionally and

---

[2]Although it appears clear that John Hancock would have paid proceeds on the two policies covering the life of Samuel, Jr., it is unclear why they would have paid proceeds of a third policy that was ostensibly on the joint lives of Samuel, Jr. and Ida. Whatever the reason, that issue is not before the Court.

[3]It appears that the basis for Chico Enterprises' claims against the Chico daughters stems from an agreement that Samuel, Jr. and Chico Enterprises, Inc. allegedly entered into on February 1, 1990, under which Samuel, Jr. would reimburse the company for any insurance premiums it paid on his behalf, which at his death totaled $670,140.00. According to the Claimants, they were unaware of these facts until after Samuel, Jr. died.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

improperly diverted the proceeds of the insurance policies from them.

At all times relevant to the issues here, Westfield insured Shephard and her husband under a homeowner's policy, HOP 7579065 (the "Shephard policy"). Westfield also insured Derrico and her husband under a homeowner's policy, Wespak Policy No. WNP-5545692 (the "Derrico Wespak policy"), and also under Westfield Personal Liability Umbrella Policy No. UXP-4085408 (the "Umbrella Policy").[4]

Westfield filed its complaint in this Court on July 13, 2015 (dkt. no. 1), seeking a declaration that the subject policies do not cover Shephard or Derrico for any of the claims asserted against them in the underlying action, and that it therefore has no duty to defend or indemnify them in connection with that case. Shephard and Derrico answered the complaint on August 18, 2015 (dkt. no. 10). On January 15, 2016, Westfield moved for summary judgment (dkt. no. 19), arguing that there is no issue of material fact in dispute regarding whether its policies afford coverage for the underlying claims against Shephard and Derrico. Specifically, Westfield contends: (1) there is no claim for "bodily injury,"

---

[4]When discussing all three policies collectively, the Court will refer to them as the "subject policies."

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

"personal injury," or "property damage," which is required to trigger coverage; (2) none of the claims or losses arise from an "occurrence" as defined and required in the policies; (3) even if coverage existed, the Expected or Intended Injury Exclusion clause ("intentional acts clause") would operate to exclude it; and (4) even if there was coverage, the business exclusion clause of the policies would operate to exclude coverage.

Shephard and Derrico also filed a motion for summary judgment (dkt. no. 23), arguing that the policies provide coverage because the underlying claims fall under the policies' definition of "personal injury," and the diverted insurance proceeds qualify as "tangible property," therefore falling within coverage provided for "property damage" as defined by the policies. Shephard and Derrico also dispute whether either the intentional acts or business exclusions operate to exclude coverage. These motions are fully briefed and ripe for review.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. <u>Id.</u> at 248–52.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

### III. APPLICABLE LAW

As a declaratory judgment action based on diversity jurisdiction, the Court must apply West Virginia substantive law, as it is the state in which the subject policies were issued. See Beckley Mechanical, Inc. v. Erie Ins. & Cas. Co., 374 Fed. Appx. 381, 383, n. 1 (4th Cir. 2010) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).

Under West Virginia law, liability insurance policies establish two main duties on the part of the insurer, the duty to defend and the duty to indemnify. See e.g., Aetna Cas. & Sur. Co. v. Pitrolo, 342 S.E.2d 156, 160 (W.Va. 1986); Donnelly v. Transportation Insurance Co., 589 F.2d 761, 765 (4th Cir. 1978). An insurer's duty to defend is normally triggered when "the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Pitrolo, 342 S.E.2d at 160; see also Syl. Pt. 2, Farmers and Mechanics Mut. Ins. Co. of West Virginia v. Cook, 557 S.E.2d 801, 802 (W.Va. 2001). If any of the claims against the insured might trigger coverage, the insurer must defend against all the claims asserted. See Horace Mann Ins. Co. v. Leeber, 376 S.E.2d 581, 584 (W.Va. 1988) (citing Donnelly, 589 F.2d

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

at 765). Nevertheless, the insurer need not provide a defense if the claims against the insured are "entirely foreign to the risk insured against." Air Force Ass'n v. Phoenix Ins. Co., 1990 WL 12677, at *2 (4th Cir. 1990) (citing Donnelly, 589 F.2d at 765)

The specific wording of an insurance policy determines whether it provides coverage for a particular claim. See Beckley Mechanical, 374 Fed. Appx. at 383; Cherrington v. Erie Ins. Property and Cas. Co., 745 S.E.2d 508, 524 (W.Va. 2013). Indeed, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 8, Cherrington, 745 S.E.2d at 511 (internal quotations and citations omitted). Courts should not endeavor to interpret policy provisions unless they are unclear or ambiguous. Id. Instead, courts must give terms and provisions their meaning in the "plain, ordinary and popular sense, not in a strained or philosophical sense." Polan v. Travelers Ins. Co., 192 S.E.2d 481, 484 (W.Va. 1972); see also Syl. Pt. 9, Cherrington, 745 S.E.2d at 511.

A term is ambiguous if it "'is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, . . .'" Allstate Ins. Co. v. Ashley, 1994 WL 580090, at *2 (4th Cir. 1994)

9

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING**
**DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

(quoting Syl. Pt. 1, Surbaugh v. Stonewall Cas. Co., 283 S.E.2d 859, 860 (W.Va. 1981) (quoting in turn Syl. Pt. 1, Prete v. Merchants Property Ins. Co. of Ind., 223 S.E.2d 441 (W.Va. 1976))). Courts should resolve any ambiguity in favor of the insured. See Jenkins v. State Farm Mut. Auto. Ins. Co., 632 S.E.2d 346, 350 (W.Va. 2006) (quoting Leeber, 376 S.E.2d at 584). Moreover, when the ambiguous language is exclusionary in nature, it should be "strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Jenkins, 632 S.E.2d at 346 (quoting Syl. Pt. 5, National Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488 (W.Va. 1987)).

Finally, interpretation of an insurance contract, including whether language contained within it is ambiguous, is a question of law and subject to de novo review. See Syl. Pt. 2, Cook, 557 S.E.2d at 802.

### IV. RELEVANT POLICY LANGUAGE

The subject policies all contain identical definitions of the following policy terms:

> **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
> a.   **Bodily injury**; or
> b.   **Property damage**.

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]

> **Bodily injury** means bodily harm, sickness or disease, including required care, loss of services and death that results.
>
> **Property damage** means physical injury to, destruction of, or loss of use of tangible property.

Dkt. No. 19-2 at 17-18; Dkt. No. 24 at 2-3 (emphasis in originals).

The Shephard policy contains the following personal liability coverage provision:

> **Coverage E - Personal Liability**
>
> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:
> 1.  Pay up to our limit of liability for the damages for which an **insured** is legally liable. . . . ; and
> 2.  Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. . . .

Dkt. No. 19-2 at 34 (emphasis in original). In addition, the Shephard policy includes an endorsement that broadens its coverage by redefining bodily injury to include "personal injury." See Dkt. No. 24 at 6. Under that endorsement:

> **"Personal injury"** means injury arising out of one or more of the following offenses:
> (1)  False arrest, detention or imprisonment, or malicious prosecution;
> (2)  Libel, slander or defamation of character;
> (3)  Invasion of privacy, wrongful eviction or wrongful entry.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

Id. (emphasis in original).

Similarly, the Derrico Wespak policy contains the following personal liability provision defining when the duties to defend and indemnify are triggered:

> **Coverage E - Personal Liability**
>
> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury, property damage,** or **personal injury** caused by an **occurrence** to which this coverage applies, we will:
> 1.   Pay up to our limit of liability for the damages for which an **insured** is legally liable. . . . ; and
> 2.   Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. . . .

Dkt. No. 24 at 9 (emphasis in original). The Derrico Wespak policy's definition of personal injury is identical to that found in the Shephard policy. See Dkt. No. 24 at 9.

Finally, the Derrico Umbrella Policy provides that:

> [Westfield] will pay damages, in excess of the *retained limit*, for:
>
> 1.   *Bodily injury* or *property damage* for which an *insured* becomes legally liable due to an *occurrence* to which this insurance applies; and
> 2.   *Personal injury* for which an *insured* becomes legally liable due to one or more offenses listed under the definition of *personal injury* to which this insurance applies.

12

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING**
**DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

Dkt. No. 24 at 12 (emphasis in original). Further, "[i]f a claim is made or a suit is brought against an *insured* for damages because of bodily injury or *property damage* caused by an *occurrence* or *personal injury* caused by an offense to which this policy applies, we . . . [w]ill provide a defense." Id.

The Umbrella Policy goes on to define personal injury as

> injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:
>
> 1.  False arrest, detention or imprisonment.
> 2.  Malicious prosecution;
> 3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> 4.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
> 5.  Oral or written publication of material that violates a person's right of privacy.

Dkt. No. 24 at 11-12.

## V. LEGAL ANALYSIS

The threshold question is whether coverage was triggered by an occurrence as defined under the subject policies. If so, it raises the secondary question of whether the intentional acts or business exclusions operate to deny that coverage.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

## A.   Coverage

### 1.   *Under the Shephard and Derrico Wespak Policies*

Based on the unambiguous language of the policies, coverage is triggered by an occurrence that results in bodily injury, property damage, or personal injury. The Court looks to the allegations in the underlying complaint to determine whether Westfield has a duty to defend or indemnify under the policies. See West Virginia Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 490 (W.Va. 2004) ("In other words, an insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers.").

There is no dispute that the underlying complaint makes no claims for bodily injury as defined under the subject policies. See Dkt. No. 19-1 at 1-17. In addition, it appears that the underlying complaint asserts no claims for property damage in the traditional sense because the gravamen of the action is the diversion of life insurance proceeds. Id.

Shephard and Derrico, nevertheless, argue that the insurance proceeds are cash and qualify as tangible property under the property damage definition (dkt. no. 24 at 22-23). Further, they assert that the torts specifically enumerated under the personal

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

injury definitions in the subject policies do not explicitly exclude other torts. From that, they reason that the definitions of personal injury are ambiguous and, when construed against Westfield, trigger coverage for the claims alleged in the underlying complaint.

These arguments, however, miss the mark. The determinative issue is whether any of the alleged injuries resulted from an "occurrence." Under the subject policies, an occurrence is "an accident including continuous or repeated exposure to substantially the same general harmful conditions . . . ." The Supreme Court of Appeals of West Virginia has recently defined "accident" as follows:

> In determining whether under a liability insurance policy an occurrence was or was not an 'accident' or was or was not deliberate, intentional, expected, desired, or foreseen — primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue. Furthermore, <u>an accident is never present when a deliberate act is performed</u> unless some additional unexpected, independent and unforeseen happening occurs which produces the damage.

<u>State ex rel. Nationwide Mut. Ins. Co. v. Wilson</u>, 778 S.E.2d 677, 683 (W.Va. 2015) (emphasis added) (internal quotations and citations omitted); <u>see also</u> <u>Cherrington</u>, 745 S.E.2d at 520 (defining an occurrence as an accident that "'was not deliberate,

15

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

intentional, expected, or foreseen'" (quoting Syl. pt. 1, <u>Columbia Casualty Co. v. Westfield Insurance Co.</u>, 617 S.E.2d 797 (W.Va. 2005))).

In <u>Wilson</u>, the Supreme Court confronted a definition of occurrence identical to the one in the subject policies and determined that claims for breach of contract, defamation, fraud, and conversion, among others, in the underlying complaint were either intentional or contractual in nature. <u>Id.</u> at 683-84. It went on to hold that "[i]ntentional misconduct is not an 'accident' under the terms of the [] policy." <u>Id.</u> at 684. Finally, it noted that its holding comported with West Virginia's public policy against allowing coverage for intentional torts. <u>Id.</u>

The complaint in the underlying case unambiguously alleges claims against Shephard and Derrico for (1) breach of fiduciary duty and self-dealing, (2) tortious interference with an expectancy, (3) fraud, and (4) unjust enrichment. <u>See</u> Dkt. No. 19-1 at 8-11. Even a cursory review of the complaint makes clear that all of the misconduct alleged was purposefully undertaken with the intent to channel the insurance proceeds away from Samuel, III, Ida, and Chico Enterprises.

16

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

Because the underlying complaint alleges only intentional misconduct, the claims against Shephard and Derrico do not arise from an accident or occurrence as defined under the subject policies, and no coverage exists that would indemnify them under the relevant policies.

   *2.   Under the Umbrella Policy*

Although there was no occurrence under the Shephard policy or Derrico Wespak policy that would trigger coverage for bodily injury, property damage, or personal injury, the Derrico Umbrella Policy presents a slightly different question. Under that policy, the requirement that an injury must result from an occurrence only applies to bodily injury and property damage:

> [Westfield] will pay damages, in excess of the *retained limit*, for:
>
> 1.   *Bodily injury* or *property damage* for which an *insured* becomes legally liable due to an *occurrence* to which this insurance applies; and
> 2.   *Personal injury* for which an *insured* becomes legally liable due to one or more offenses listed under the definition of *personal injury* to which this insurance applies.

Dkt. No. 24 at 12 (emphasis in original).

The personal injury clause of the Umbrella Policy does not require an occurrence before a personal injury as defined by the

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]

policy triggers coverage. Rather, personal injury coverage is triggered by claims resulting from the following enumerated "offenses" defined in the policy:

1.    False arrest, detention or imprisonment.
2.    Malicious prosecution;
3.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
5.    Oral or written publication of material that violates a person's right of privacy.

Dkt. No. 24 at 11-12.

Clearly, in the Umbrella Policy, Westfield chose not to premise coverage for personal injury on an occurrence, but rather on specific intentional offenses enumerated in the policy. The underlying complaint, however, asserts none of those claims.

Undeterred, Shephard and Derrico maintain that the claims that are alleged are covered because the enumerated offenses listed in the personal injury clause of the Umbrella Policy are not "exclusive or exhaustive" (dkt. no. 24 at 19). Consequently, an ambiguity exists that must be "strictly construed against [Westfield] and in favor of [them]." Id. (quoting Syl. Pt. 4,

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

McMahon & Sons, 356 S.E.2d at 488). Based on this ambiguity, they contend the intentional torts alleged against them fall within the personal injury clause, thus triggering coverage.[5] This argument is unavailing.

Critically, the Umbrella Policy is not ambiguous. No term is "reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, . . .'" Ashley, 1994 WL 580090, at *2. "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous." American States Insurance Co. v. Surbaugh, 745 S.E.2d 179, 183 (W.Va. 2013).

Whether a contract is ambiguous is a question of law for the Court to determine. Id. Shephard and Derrico dispute neither the meaning of the terms within the personal injury clause nor the definition of personal injury in the policy. Rather, assuming the list is not exhaustive, they seek to add by implication the intentional acts alleged in the underlying complaint.

---

[5]Notably, Shephard and the Derricos have cited no case law or other support for their contention that Westfield's enumerated list must be explicitly exclusive or exhaustive to preclude inclusion of other, non-enumerated offenses.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

Explicit language making a list exclusive or exhaustive is not required to limit application to a specific list of enumerated offenses.  Indeed, that is often the very purpose of enumeration,[6] the canon of construction, <u>expressio unius est exclusio alterius</u>, "hold[s] that to express or include one thing implies the exclusion of the other, or of the alternative."[7] <u>See</u> Black's Law Dictionary (10th ed. 2014). In accord with this canon, one may conclude that Westfield's specific enumeration of the offenses triggering coverage was intended to exclude any other offenses. Furthermore,

---

[6]<u>See, e.g</u>, <u>Fleisher v. Phoenix Life Ins. Co.</u>, 18 F.Supp.3d 456, 471 (S.D.N.Y. Apr. 29, 2014) (finding the term "based on" and other similar language to be "exhaustive, not illustrative," and noting that a normal insured would not interpret an enumerated list as "informational," rather, he would interpret it as exclusive). Similarly, the Court finds the language here, that the personal injury must "arise out of" the enumerated offenses, not simply informational, but exclusive in nature.

[7]Although often thought of as a canon of statutory construction, <u>expressio unius est exclusio alterius</u> is also a canon of contract interpretation. <u>See, e.g.</u>, <u>24th Senatorial Dist. Republican Committee v. Alcorn</u>, 820 F.3d 624, 631 (4th Cir. 2016) (citing <u>Smith Barney, Inc. v. Critical Health Sys.</u>, 212 F.3d 858, 861 (4th Cir. 2000)) (recognizing that <u>expressio unius est exclusio alterius</u> is a canon of contract interpretation); <u>Bowman Transp., Inc. v. Heinsohn</u>, 1995 WL 729507, at *2 (4th Cir. 1995) (same); <u>Cornell University v. UAW Local 2300, United Auto. Aerospace and Agr. Implement Workers of America</u>, 942 F.2d 138, 139 (2d Cir. 1991) (finding that <u>expressio unius est exclusio alterius</u> was applicable when determining whether enumerated matters subject to arbitration in a collective bargaining agreement were exclusive).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

no reasonable insured would interpret this enumerated list as merely informational rather than exclusive. See Fleisher, 18 F.Supp. 3d at 471.

Shephard and Derrico contend that there is an irreconcilable conflict between the Umbrella Policy's exclusion, purporting to exclude all intentional acts, and its personal injury clause, providing coverage for certain enumerated intentional offenses. They argue that, if the intentional acts exclusion is interpreted to apply to the personal injury liability coverage, it would "swallow" the intentional offenses that Westfield concedes are specifically covered. Dkt. No. 24 at 18-19. They cite no cases so holding, but simply declare that the clauses are ambiguous and therefore must be strictly construed against Westfield.

Contrary to the defendants' argument, an intentional acts exclusion does not automatically "swallow" enumerated intentional offenses explicitly allowed in a personal injury clause. See Hackett v. American Motorists Ins., Co., 584 S.E.2d 158, 167 (W.Va. 2003) (implicitly finding that personal injury and intentional acts clauses identical to those here could coexist and were reconcilable). Rather, the personal injury clause may carve out for

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

coverage certain acts that the policy would otherwise exclude under the intentional acts exclusion. See id.

Furthermore, a finding that coverage must extend to claims resulting from intentional acts not listed as covered in the policy would produce an absurd result. See Cherrington, 745 S.E.2d at 520 ("An insurance policy should never be interpreted so as to create an absurd result, but instead should receive a reasonable interpretation, consistent with the intent of the parties." (internal quotation omitted)). Indeed, none of the subject policies, including the Umbrella Policy, ever purported to cover personal injuries beyond those resulting from the listed enumerated offenses. Any interpretation that the personal injury clause and intentional acts exclusion are in conflict would result in coverage far broader than intended, and produce an absurd result. See id. ("[W]e will not apply a policy's plain language to obtain illogical or incongruous results.").

In sum, the claims alleged in the underlying complaint do not trigger coverage under either the Shephard policy or Derrico Wespak policy because they do not arise from an occurrence as defined under those policies. Nor do they trigger coverage under the

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING
DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

personal injury clause of the Umbrella Policy because those claims are not among that clause's enumerated offenses.[8]

**B.    Intentional Acts and Business Exclusion Clauses**

Having determined that there is no coverage under the subject policies, it is not necessary to further analyze whether either the intentional acts exclusion or business exclusion would operate to deny coverage.

## VI. CONCLUSION

For the reasons discussed, the Court concludes that the claims alleged in the underlying complaint do not constitute an occurrence under the subject policies, and thus no coverage exists under the Shephard policy and Derrico Wespak policy.  For the same reasons, there is no coverage for bodily injury or property damage under the Umbrella Policy. Furthermore, coverage is not triggered under the personal injury clause of the Umbrella Policy because the offenses alleged in the underlying complaint are not included in the intentional acts enumerated in that clause.

Accordingly, the Court **GRANTS** Westfield's motion for summary judgment (dkt. no. 19), and **DECLARES** that it has no duty to defend

_____

[8]The same analysis would apply to find no coverage exists under the personal injury clauses of either the Shephard policy or Derrico Wespak policy, as those clauses also list enumerated offenses that do not include the intentional torts alleged in the underlying complaint.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19] AND DENYING**
**DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT [DKT. NO. 23]**

or indemnify Shephard or Derrico on the underlying claims. Based on that ruling, the Court also **DENIES** Shephard and Derrico's motion for summary judgment (dkt. no. 23).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: August 31, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE